Lucia T. Cooper, administratrix, *vs.* Massachusetts Mutual Life Insurance Company.

In an action on a policy of insurance on the life of a person who voluntarily killed himself, which was provided to be void if he should " die by suicide," the plaintiff, " in order to take the death out of the proviso," offered to prove that " the assured at the time of committing the act of self-destruction was insane, that he acted under the influence and impulse of insanity, and that his act of self-destruction was the direct result of his insanity ; " but the judge ruled that such proof would not entitle the plaintiff to recover, and directed a verdict for the defendants. *Held,* that the plaintiff had no ground of exception.

Contract by the administratrix of the estate of James F. Cooper upon a policy of insurance made by the defendants to said Cooper on his life in the sum of $3000, and containing the following proviso : " Provided always, and it is hereby declared to be the true intent and meaning of this policy, and the same is accepted by the assured upon this express condition, that if said person whose life is hereby insured shall become so far intemperate as to impair his health seriously and permanently, or induce delirium tremens, or shall die by suicide, or in consequence of a duel, or by the hands of justice, or in the violation of or attempt to violate the laws of the United States, or of any state, county or place, this policy shall thereupon terminate, and be void and of no effect." The answer alleged that said Cooper died " by suicide voluntarily and intentionally and knowingly committed," whereby the policy was avoided within the terms of the proviso.

At the trial in the superior court, before *Rockwell*, J., the plaintiff's counsel, in opening her case, read the policy to the jury, and " then stated the cause and manner of the death of the assured to be as follows : On the 15th of May 1868, about six o'clock in the morning, the assured rose from his bed, which was on the second floor of the house, and, without dressing himself, went up stairs to the attic, took a piece of old bedcord which had been left lying on the attic floor, and then, placing a chair near the door, he fastened one end of the cord over the upper part of the door frame and there hung himself by the neck. No person was in the assured's sleeping-room at the time he left it, or saw him afterwards until he was dead."

" The plaintiff's counsel further stated that, in order to take the death of the assured, in the manner stated, out of the proviso of the policy, and to show that the policy was nevertheless valid and binding upon the defendants, they would prove that the assured at the time of committing the act of self-destruction was insane, that he acted under the influence and impulse of insanity, and that his act of self-destruction was the direct result of his insanity.

" The judge thereupon ruled, upon the request of the defendants, that the plaintiff could not recover even if she should prove all the facts stated in the opening; and ordered a verdict for the defendants." The plaintiff alleged exceptions.

*G. D. Robinson*, for the plaintiff.

*G. M. Stearns*, (*M. P. Knowlton* with him,) for the defendants.

CHAPMAN, C. J. The proviso in the policy is, that it shall be void if the assured " shall die by suicide." The plaintiff offered to prove that the assured, at the time of committing the act of self-destruction, was insane; that he acted under the impulse of insanity; and that his act of self-destruction was the direct result of his insanity. The question presented is, whether, if these facts are true, the act of self-destruction avoids the policy, within the terms of the proviso. The subject has been so fully discussed in the cases cited, that further argument is needless. We need only collate the cases.

In *Borradaile* v. *Hunter*, 5 M. & G. 639, the words were, " if the assured should die by his own hand." He drowned himself in the Thames; and the jury found that he did it voluntarily, but that he was not capable of judging between right and wrong. It was held that the proviso was not limited to acts of felonious suicide, and that the policy was void. Tindal, C. J., dissented. But the jury were instructed that it must appear that the assured was conscious of the probable consequences of his act, and did it for the express purpose of destroying himself voluntarily, having at the time sufficient mind and will to destroy himself.

In *Clift* v. *Schwabe*, 3 C. B. 437, the words were, " should commit suicide." The assured swallowed a quantity of sulphuric

acid, sufficient to occasion death, for the purpose of killing him-self, of which he died the next day.   It was held by Parke and Alderson, BB., Patteson, J., and Rolfe, B., to be immaterial whether he was a responsible agent.   Pollock, C. B., and Wight-n,an, J., dissented.   But Alderson, B., says the words do not apply to cases in which the will is not exercised at all, as when death results from an accident or delirium; but when the de-struction is voluntary, though the will may be perverted.

In *Dean* v. *American Insurance Co.* 4 Allen, 96, the words were like those in *Borradaile* v. *Hunter,* "shall die by his own hand."   The assured cut his throat with a razor.   The plaintiff however alleged and offered to prove that the act whereby the death was caused was the direct result of insanity; that the insan-ity was what is called suicidal depression, impelling him to take his life, and that suicide is the necessary and direct result of such insanity or disease; and it was held that this avoided the policy. But Bigelow, C. J., in giving the opinion, adverts to the word "suicide," and avoids discussing its signification; thereby leav-ing the present case undecided by this court.   But he says that, if the death is caused in the madness of delirium, or under any combination of circumstances from which it may be fairly in-ferred that the act of self-destruction was not the result of the will and intention of the party, adapting the means to the end, and contemplating the physical nature and effects of the act, it would not be within the policy.   This limitation is, in substance, the same with that which is quoted from the other cases cited.

In *Eastabrook* v. *Union Insurance Co.* 54 Maine, 224, the words were, "shall die by his own hand."   The jury found that the self-destruction was the result of a blind and irresistible impulse over which the will had no control, and was not an act of voli-tion.   It was held that this did not avoid the policy; and Ap-pleton, C. J., in a very elaborate opinion, says the decision was in entire conformity with the law as stated in *Dean* v. *American Insurance Co.* referring to the limitation stated above.   But Kent, J., dissented.

In *Breasted* v. *Farmers' Loan & Trust Co.* 4 Selden, 299, the words were, "should die by nis own hand."   It was held, by a

majority of the court of appeals, three of the justices dissenting that, if the assured was insane, and incapable of discerning between right and wrong, his suicide did not avoid the policy. This decision is at variance with the other authorities cited, and is contrary to our own interpretation of the same words in *Dean v. American Insurance Co.*

Upon a careful consideration of the elaborate discussion of the matter in the cases above cited, by the dissenting judges as well as by those in the majority, we think that, as applied to this case, there is no substantial difference of signification between the phrases " shall die by his own hand," " shall commit suicide," and " shall die by suicide ; " and that they include self-destruction under the influence of insanity, within the limitation above stated. In the present case, there was no offer to prove madness of delirium, or that the act of self-destruction was not the result of the will and intention of the party, adapting the means to the end, and contemplating the physical nature and effects of the act. The insanity therefore was not such as to take the case out of the proviso.          *Exceptions overruled.*