Ratallo, J.
The policy sued upon in this action contained the usual condition that in case the assured should die by his own hand the policy should be void. He took his own life by shooting himself, but the evidence tended strongly to show that he was at the time insane. The court, among other things, submitted to the jury the question whether the assured was at the time of his self-destruction incapable of determining whether the act was right or wrong, and not conscious of its moral obliquity. The case distinctly presents the question whether that degree of mental disorder is sufficient to prevent the act of self-destruction from operating as a breach of the condition and avoiding the policy, notwithstanding that the assured retained at the time sufficient power of mind and reason to understand the physical nature and consequences of the act by which he destroyed his own life, and it was voluntarily and willfully committed by him with the purpose and intention of causing his own death.
This question is raised by exceptions to the charge; but especially by exceptions to refusals of requests to charge, framed with reference to the precise point.
*173 The charge, considered . independently of the requests, directed the attention of the jury to other inquiries touching the sanity of the deceased, in connection with the question of his consciousness of the moral obliquity of his act, and might be sustained as not resting solely upon the question of moral responsibility. But the requests to charge, and their refusal by the court, clearly raised the question first stated.
The defendant’s counsel, among other things, requested the court to charge: that if the act of self-destruction was the voluntary and willful act of the deceased, he having at the time sufficient power of mind and reason to understand the physical nature and consequences of such act, and having at the time a purpose and intention to cause his own death by the act, it avoided the policy. This request was refused, and exception was duly taken.
The rule is well settled in England in conformity with the request. It is there held that a voluntary and intentional self-destruction by the insured is within the proviso, notwithstanding that he was at the time incapable of appreciating the moral quality of the act, and that his capacity to appreciate its moral nature is not a material question, except as bearing upon the inquiry whether he had sufficient mental capacity to understand its physical consequences and was in possession of his power of will. The leading cases upon this subject are Borradaile v. Hunter (5 Man. & Gt., 639) and Clift v. Schwabe (3 Man., Gr. & Scott [3 C. B.], 437).
According to those decisions, to take a case out of the proviso, the party must have been insane to such a degree as to render him unconscious that the act he did would cause his death, or he must have committed it under the influence of some insane impulse which he could not resist. His mind must have been so far gone that it was not moving to the act. It is not sufficient that his moral sense was so impaired as to deprive the act of its criminal character.
It is contended that the case of Breasted v. The Farmers ’ Loan and Trust Co. (4 Hill, 73, and 8 N. Y., 299) establishes a different doctrine in this State. In 4 Hill, 73, the *174 case came before the court on demurrer to a replication, which averred that when the assured drowned himself he was of unsound mind and wholly unconscious of the act. Nelson, Ch. J., in delivering the opinion of the court, placed his decision upon the ground that, speaking legally, such drowning was no more the act of the assured than if he had been impelled by irresistible physical power. The learned judge also intimates that the connection in which the words stand in the policy would seem to indicate that they were intended to express a criminal act of self-destruction, as they are found in conjunction with the provisions relating to the termination of the life of the insured in a duel, or his execution as a criminal. But he does not place the decision on that ground, nor could it well stand there if the language of the policy in that case was the same as in the present, because in this policy the provisions in conjunction with which the words are used relate as well to acts not criminal, as to criminal acts; the same sentence embracing the visiting of prohibited territories, engaging in service upon the sea, or in military service, death from intemperance, etc. The maxim noscitur a sooiis cannot therefore afford a reliable rule of interpretation. (See opinion of Grover, J., in Bradley v. Mutual Benefit Life Ins. Co., 45 N. Y., 434.)
In 8th New York, 299, the case of Breasted, came before the Court of Appeals on appeal from the decision of the Supreme Court upon the demurrer, and also upon a judgment on the report of a referee on issues of fact which had been joined in the action. The referee had found that the assured threw himself into the river, while insane, for the purpose of drowning himself, not being mentally capable at the time of distinguishing between right and wrong. There was no finding that the act was voluntary or willful. Such a finding would have established that the man was not deprived of his power of will, and that he could have restrained himself from the commission of the act, and would have negatived any insane impulse which he could not resist. Bearing in mind the well-established principles upon which judgments based upon find *175 ings of fact by a court or referee are reviewed in this appellate tribunal, and that, in regard to matters of fact, all intendments of which the evidence in the case or the findings are fairly susceptible must be in support of such judgments, and that the finding, in general terms, of insanity, may have comprehended a deprivation, not merely of moral sense, but of any rational will, the court could hardly have come to any other conclusion than it did. The whole reasoning of the opinion of Willard, J., which prevailed over the dissents of Gardner, Jewett and Johnson, JJ., shows that he regarded the point raised upon the demurrer—viz., that the assured, at the time of destroying his own life, was of unsound mind and wholly unconscious of the act, and that presented by the finding as identical, and that' the learned judge regarded the finding as establishing that the assured was so insane as not to be capable of forming an intention, and that he had not sufficient mind to concur in the act. The learned judge does not undertake to overrule the cases of Borradaile v. Hunter and Clift v. Schwabe, but expressly distinguishes those cases from the one before him by pointing out that they assumed that the act was voluntary, which fact he holds that the finding in the case of Breasted failed to establish.
A finding in the language of the request in the present case, that the deceased had sufficient power of mind and reason to understand the physical nature and consequences of the act, and that he committed it voluntarily and willfully, and in pursuance of a purpose and intention thereby to' cause his own death, would have established that insanity did not exist to such a degree as to prevent him from forming an intention, or being conscious of the act he was doing. It would have established that his mind did concur with the act, and that this, being voluntary, was not the result of any insane impulse or want of power of self-control. Whether so much power of reasoning and self-control could be left in a- mind so impaired as to be incapable of appreciating the moral obliquity of the crime of suicide, is rather a scientific than a legal question. Judge Willard, in the Breasted case *176 (8 N. Y., 305), expresses the opinion that a man so insane as to be incapable of discerning between right and wrong can form no intention. This, it must be observed in passing, is a much broader proposition than that the failure to appreciate the wrong of a particular act evinces a total deprivation of reason. The loss of moral sense, even to that extent, in one who had previously possessed it, would, undoubtedly, be a fact bearing strongly upon the question whether he retained his other faculties. But in the practical administration of justice, in cases of this description, it seems to us a dangerous doctrine to hold that the attention of the jury should be directed principally to the degree of appreciation which the deceased had of the moral nature of his act, and that this question, most speculative and difficult of solution, should be made the test by which it should be determined whether he had knowingly and voluntarily violated the condition of his insurance. The real question is, whether he did the act consciously and voluntarily, or whether, from disease, his mind had ceased to control his actions. Supposing a man to be in possession of his will and of the ordinary mental faculties necessary for self-preservation, but that his mind has become so morbidly diseased on the subject of suicide that he cannot appreciate its moral wrong, and in this condition of mind he takes his own life voluntarily and intentionally—perhaps with the very object of securing to his family the benefits of an insurance upon his life—it is difficult to say that this is not a death by his own hand within the meaning of the policy.
It has been doubted whether public policy would permit an insurance covering the case of intentional suicide, by the insured, while sane. But however this may be, no rational doubt can be entertained that a condition exempting the insurers from liability in case of the death of the assured by Ms own hand, whether sane or insane, would be valid if mutually agreed upon between the insurer and the insured.' When nothing is said in the policy with respect to insanity, the words “ die by his own hand,” in their literal sense, com *177 prebend all eases of self-destruction. The exceptions which have been engrafted upon these words by judicial decisions must rest upon the ground that the excepted cases could not have been within the meaning of the parties to the policy. The intent on the part of the insurer in inserting the condition is evident. The policy creates in the assured a pecuniary interest in his own death. To a man laboring under the pressure of poverty and the urgent wants of a dependent family, or' of inability to discharge sacred pecuniary obligations, or other similar causes, the policy offers a temptation to self-destruction. To protect the insurers against the increase of risk, arising out of this temptation, is the object for which the condition in question is inserted. (Per Maule, J., 5 M. & Gt., 653.) The condition ought, therefore, to be so construed as to exclude only those cases in which these motives could not have operated—such as accident or delirium. (Ibid.)
So far as considerations of public policy have any place in determining such a question, they are undoubtedly in favor of confining the exceptions to the condition to cases in which the self-destruction is clearly shown to have been accidental or involuntary.
I do not find that any of the cases have gone so far as to adjudicate that the mere want of capacity to appreciate the moral wrong involved in the act, where it was voluntary and intentional, unaccompanied by any want of appreciation of its physical nature and consequences, or by any insane impulse or want of power of will or self-control, is sufficient to take a case out of the proviso.
The contrary has been held in several cases, and, the doctrine of Borradaile v. Hunter adopted. (Dean v. The American Mutual Life Ins. Co., 4 Allen, 96 ; Cooper v. The Massachusetts Mut. Life Ins. Co., 102 Mass., 227; Nimick v. Ins. Co., 10 Am. Law Reg. [N. S.], 102; Gay v. Union Mutual Life Ins. Co., 9 Blatchford, 142 ; 2 Bigelow, Life and Accident Cases, etc., 4; Wharton & Stille Med. Jur., §240; Fowler v. The Mut. Life Ins. Co. of N. Y.,, 4 Lansing, 202.) *178 In the case of St. Louis Mut. L. Ins. Co. v. Graves (6 Bush. [Ky.], 268) the Court of Appeals, of Kentucky, was equally divided.
• The only case cited in support of the respondent’s view, in addition to the case of Breasted v. The Farmers' Loan and Trust Co., which has already been commented upon, is the case of Terry v. Life Insurance Co. (15 Wallace, 580). But it will be found, upon an examination of that case, that the question of the capacity of the deceased to appreciate the moral character of the act was not involved, and that all that is said upon that subject in the opinion is obiter. The judge at the trial expressly instructed the jury that it was not every degree of insanity which would so far excuse the party taking his own life as to make the party insuring liable, but that the mind of the deceased must have been so far deranged as to have made- him incapable of using a rational judgment in regard to the act he was committing, or he must have been impelled by some insane impulse which the reason that was left him did not enable him to resist. Hot a word was said to the jury in respect to his consciousness of the moral quality of the act. (1 Dillon C. O. B., 404.) The requests to charge which were refused required the submission to the jury only of the question of the capacity of the deceased to understand the nature and consequences of the act, and did not require them to find that it was voluntary, and therefore did not exclude the hypothesis of an insane impulse which he could not resist.
The questions raised by the exceptions in that case differ widely from the present, and the -judgment therein is not inconsistent with the doctrine of Borradaile v. Hunter and the other cases cited. The opinion delivered in the Supreme Court in the Terry case contains some general language which goes far beyond the charge in the Circuit Court, and was not necessary to sustain the judgment. I refer to that part of the opinion which is relied upon in the points of the respondent in this case, and in which the learned judge says that “if the death is caused by the .voluntary act of the *179 assured, he knowing and intending that his death shall be the result of his act, but when his reasoning faculties are, so far impaired that he is not able to understand the moral character, the general nature, consequences and effect of the act he is about to commit, or when he is impelled, thereto by an insane impulse which he has not the power to resist,” the insurer is liable.
The precise effect of this passage is not very clear to us, as it includes several conditions which can hardly coexist. It can be conceived that the act might have been voluntary aim the self-destruction intentional, though the assured failed to appreciate its moral character; but it is difficult to conceive how the act could have been voluntary and intentional when the faculties of the deceased were so impaired that he was not able to understand “the general nature, consequences and effect of the act he was about to commit,” or when he was impelled thereto by an insane impulse which he had not the power to resist.
Even if the decision in the Terry case were an authority binding upon us, we should not regard it as overruling the case of Borradaile v. Hunter and kindred cases. The first request to charge was framed in accordance with the doctrine of those cases, and we think that it should have been granted.
An exception to a ruling upon evidence is also urged on the part of the appellant.
On the trial the following question was put by the plaintiff’s counsel to Dr. Dean, a medical witness, called on the part of the plaintiff: “ Assuming that a person had that form of insanity which you denominate melancholia, and had committed suicide, you would attribute that suicide to the disease ? ” This question was objected to and admitted, and the witness answered “ Tes, I should attribute it as the result of insanity.”
We think that the exception to the admission of this evidence was well taken. The question called not for any fact or information peculiarly within the knowledge of an expert for the purpose of guiding the jury in coming to a conclu *180 sion, but for the inference of the witness from a supposed fact, which inference the jury were capable of drawing, and which it was within their province to draw, if justified by the facts proved, without being influenced by the opinion of the witness. (Kennedy v. The People, 39 N. Y., 255-257.) There should be a new trial, with costs to abide the event. All concur.
Judgment reversed, and new trial granted.