Antonio De Gogorza, Respondent, *v.* The Knickerbocker Life Insurance Company, Appellant.

A condition in a policy of life insurance declaring it void in case of the death of the insured by his own hand or act, *sane or insane,* is valid; and if the insured commits suicide, although at the time utterly bereft of reason, it is a death by his own hand or act within the meaning of the condition, and the policy is forfeited. (Earl and Dwight, CC., dissenting.)

(Argued January 8, 1875; decided May term, 1875.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, affirming

a judgment in favor of plaintiff entered upon a verdict of a jury.

This action was brought upon a policy of insurance issued by defendant upon the life of plaintiff's husband.

The policy contained a provision that it should be void and of no effect if the insured should "die by his own hand, sane or insane."

For some considerable time prior to October 24, 1870, Mr. Gogorza had some disease of his brain which seriously affected his mind, and on that day he was found in his room, in his own house, dead, a pistol having been discharged, by his own hand, into his mouth. The pistol belonged to his son, and there was no evidence that he knew that it was loaded, and there was no evidence of the circumstances of his death, except what appeared when he was discovered dead. At the close of all the evidence, defendant's counsel asked the court to charge the jury as follows : 1. That there is no evidence that the death of the assured was accidental. 2. That the assured is shown, by the complaint and proofs of loss (over and above the oral testimony as to the circumstances of his death), to have died, *in fact,* by his own hand and act ; and that, whether he was sane or insane at the time, the defendants are not liable under the policy ; or, if the court refuse to charge as secondly requested, then, 3, that whether he was sane or insane at the time of his death, the defendants are not liable if the assured, *in fact,* came to his death "by his own hand or act."

In his charge, the judge left it to the jury to find whether the death of the assured was occasioned by an accidental discharge of the pistol while it was in his hands, and charged them, if they so found, to find for the plaintiff. He also charged them that whether the assured was sane or insane, if he intended self-destruction, and the act of firing the pistol was his voluntary act for the purpose of ending his life, the plaintiff could not recover. He further charged them, that if the act causing the death of the assured was the involuntary act of one incapable of exercising his will, then the company

would be liable. The defendants excepted to the refusal to charge as requested, and to the charge as made.

*H. W. Johnson* for the appellant. There could be no recovery under the policy if the death of the insured was caused by his own hand, whatever might have been the condition of his mind. (*Estabrook* v. *Un. Mut. L. Ins. Co.*, 54 Me., 224; *Pierce* v. *Trav. Ins. Co.*, 3 Ins. L. J., 422; *Mallory* v. *Trav. Ins. Co.*, 2 id., 839; 54 N. Y., 651; 47 id., 52; *Van Zandt* v. *Mut. B. L. Ins. Co.*, 50 id., 176.) This provision in the policy was valid, and not in conflict with any statute or rule or principle of public policy. (*Borradale* v. *Hunter*, 5 Scott [N. R.], 418; 5 M. & G., 639; *Clift* v. *Schwabe*, 3 C. B., 437; *Jackson* v. *Forster*, 5 Jur. [N. S.], 547; *Breasted* v. *F., L. and T. Co.*, 4 Hill, 73; 8 N. Y., 299; *Estabrook* v. *Un. Mut. L. Ins. Co.*, 54 Me., 224; *Dean* v. *Am. Mut. L. Ins. Co.*, 4 Al., 96.) Under this proviso no inquiry into the mental condition of the insured at the time of his death was necessary or permissible to determine the question of liability. (*Minick* v. *Mut. B. L. Ins. Co.*, 1 Bigelow, 689; *Cooper* v. *Mass. Mut. L. Ins. Co.*, id., 758; 102 Mass., 227; *Gay* v. *Un. Mut. L. Ins. Co.*, 2 Bigelow, 4; *Terry* v. *L. Ins. Co.*, 2 id., 31; *St. L. L. Ins. Co.* v. *Graves*, 6 Bush, 268.)

*Joseph H. Choate* for the respondent. The question whether the pistol with which the insured was shot went off by accident was properly left to the jury. (*Mallory* v. *Trav. Ins. Co.*, 47 N. Y., 52; *Drew* v. *Pass. As. Co.*, 6 H. & N., 838.) The insertion in the policy of the words "sane or insane" do not alter the question whether the insured died by his own hand or act in the sense of the law or the settled rule of construction that those words require an intentional, voluntary act of self-destruction. (*Breasted* v. *F., L. and T. Co.*, 4 Hill, 73; 4 Seld., 299; *Van Zandt* v. *Mut. B. L. Ins. Co.*, 55 N. Y., 169; *Morel* [*Traité des Mal. Meut.*], 138; *Fowler* v. *Mut. L. Ins. Co.*, 4 Lans., 202; *Dean* v. *Am. Mut. L. Ins.*

*Co.*, 4 Al., 96, 102 ; *Borradaile* v. *Hunter*, 5 M. & S., 639 ; *Schwabe* v. *Clift*, 3 C. B., 437 ; 61 Eng. C. L., 137 ; *Cooper* v. *Mass. Ins. Co.*, 102 Mass., 227 ; *Estabrook* v. *Un. Ins. Co.*, 54 Me., 224 ; *Am. L. Ins. Co.* v. *Isett*, 74 Penn., 176 ; *Moore* v. *Conn. Mut. L. Ins. Co.*, 3 Ins. L. J., 444 ; *Gay* v. *Mut. L. Ins. Co.*, 9 Blatch., 142 ; Shep. Touch., 87 ; Bliss on L. Ins. [2d ed.], 415 ; May on Ins., 381 ; 3 Ins. L. J., 422.)

Reynolds, C.  The learned judge at the Circuit, among other things, instructed the jury, in substance, that if the act which caused the death of the assured was not a voluntary act, not the 'act of his own will, but an involuntary act when he was in a mental condition which rendered him incapable of exercising his will, then the defendant was liable.  A verdict for the plaintiff having been rendered under this direction, I shall assume that the jury found that when the hand of the assured delivered the fatal shot he was wholly bereft of reason.  This view of the result of the verdict is the most favorable that can be taken in aid of the plaintiff's claim, unless the death was purely accidental, which is scarcely pretended, and to which some reference will be hereafter made.

It is now to be regarded as the settled law of this country, and of England, that a clause in a policy of life insurance exempting the insurer from liability if the assured " die by his own hand," has reference to an intelligent or voluntary act, and not to a suicide committed by a party in a state of mental derangement so great that the act of self-destruction is to be regarded as wholly involuntary.  ( *Van Zandt* v. *The Mut. Ben. L. Ins. Co.*, 55 N. Y., 169 ; *Borradaile* v. *Hunter*, 5 M. &. G., 639 ; *Clift* v. *Schwabe*, 3 C. B., 437 ; *Eastabrook* v. *The Union Mut. Life Ins. Co.*, 54 Maine, 224 ; *Dean* v. *Am. Mut. Life Ins. Co.*, 4 Allen, 96 ; *Life Ins. Co.* v. *Terry*, 15 Wall., 580.)

In the present case, the provision which avoids the policy is, that if the assured " shall die by his own hand or act, sane or insane," the insurer shall not be liable.  The question therefore is, whether the addition of the words " sane or

insane" is to be considered of any legal effect. If not, the instruction to the jury in this respect was correct, and the verdict ought to be sustained; but if they are of any legal force, a different result must necessarily follow.

In all the cases heretofore considered by the courts, so far as we are advised, save in those to be hereafter referred to, the words "sane or insane" were not written in the policy. Such were the leading English cases of *Borradaile* v. *Hunter* (5 M. & G., 639); *Clift* v. *Schwabe* (3 C. B., 437), and all the cases in this State, and in some other of our sister States; and in all these cases it is to be observed that the courts considered that the words "dying by his own hand" could not have a literal application; for if so, a voluntary death by drowning or by taking poison would not avoid the policy any more than a death occasioned by a pistol shot by the hand of a madman, moved by an irresistible insane impulse. But the exceptions which the courts have engrafted upon the meaning of the words employed "rest upon the ground that the excepted cases could not have been within the meaning of the parties to the policy." (55 N. Y., 169, Rapallo, J.) It is therefore held that a death by drowning or by poison is a death by the *hand* of the assured, and, also, that a death from a pistol shot delivered from the *hand* of the assured is not a death by his own *hand*, if at the time he was bereft of reason, and the act was involuntary. We have, therefore, only to consider the interpretation to be given to the language of the contract of insurance, for no question is made but that it was fully understood and agreed to by both parties.

It can scarcely be doubted that an insurer of the life of a person may by apt language guard himself from liability for all disasters if the exemption does not contravene public policy. He may provide that if the assured shall die of the small pox or any other specified disease of the body he will not be liable, and there appears to be no reason why he may not guard himself against liability if death results from any disease of the mind. Indeed, it is said by Rapallo, J., in *Van Zandt* v. *The Mutual Benefit Life Insurance Company*

(*supra*), that "no rational doubt can be entertained that a condition exempting the insurers from liability in case of the death of the assured by his own hand, *whether sane or insane*, would be valid if mutually agreed upon between the insurer and the insured," and then, in substance, adds, that if nothing is said with respect to *insanity*, the result is that a party does not "die by his own hand" if his death happens from the involuntary act of a madman.   This view of the question is but a very concise and accurate statement of the law as announced in cases previously adjudged.   No reason has been assigned, and we think none can be, if a party insuring his life shall argue that in case his death shall result from the mental disease of insanity the insurers shall not be liable.   The word "insane" or "insanity" ordinarily implies every degree of the unsoundness of mind, and in this case we assume that the assured was to the very last degree mad or insane, so that the mere act of self-destruction was wholly involuntary.

We are asked to decide that the addition of the words "sane or insane" to the words of a policy, that the insurer shall be excused if the assured "die by his own hand or act" means nothing, and it is urged by way of argument that if a madman causes his own death it is no more than a mere accident, and that, therefore, a death caused by mere accident and by one in no way responsible for his acts is in fact the same thing.   A death by accident, within the meaning of that term as used in conditions of insurance, is not a death resulting from insanity, and in that connection has no reference to the condition of the mind of the party so dying.   It has relation to casualties of a different character by which life is destroyed, and the language of a contract, unless there are special reasons to the contrary, must have a construction according to its common and ordinary meaning, as the majority of mankind would understand it.   "The best construction," says Gibson, Ch. J., in *The Schuylkill Navigation Company* v. *Moore* (2 Whart., 491), "is that which is made by viewing the subject of the contract as the mass of mankind would view it, for it may be safely assumed that such was the aspect in which the

parties themselves viewed it.  A result thus obtained is exactly what is obtained from the cardinal rule of construction." It is, therefore, not too much to say that a suicide, the result of a partial or total aberration of mind, would not, in the judgment of the great majority of mankind, be regarded as an accidental death, and the suggestion, I think, results from an acuteness of intellect not plain to a common understanding.

It may here also be suggested that the argument by which the legal effect of the words " sane or insane " is sought to be nullified proves too much, and in this respect is alike obnoxious to logic as to law.   The proposition is that the policy is avoided only if the assured shall die by his own hand, and that he does *not* die by his own hand if death results from an irresistible insane impulse.   This proves, if it proves any thing, that it is impossible for an insurer to contract for exemption from liability in cases of death resulting from insanity where it seems to be agreed that such a contract may be lawfully made.   In several of the cases considered by the courts, resulting in the rule before stated as to the effect of suicide upon the liability of the insurer, the effect of the addition of the words " sane or insane " has been incidentally referred to.

In *Borradaile* v. *Hunter* (*supra*) it will be remembered that the policy was, by the proviso, to be void in case " the assured should die by his own hands," and the insured was held not liable upon the ground that the assured, who was drowned in the river Thames, " voluntarily threw himself into the water, knowing at the time that he should thereby destroy his life and intending thereby to do so, but at the time of committing the act he was not capable of judging between right and wrong."   That the rule in this case has been fully adopted in this country we have already seen, and it may prove something in the present case that a very learned lawyer, Mr. Sergeant Wilde, arguing for the plaintiff in support of a rule *nisi* against a verdict for the defendant said, at the beginning of his argument, " It is obvious that the words of the policy are not to be taken in their strictly literal sense, otherwise

Mr. Borradaile could not be said to have died by his own *hands*. The term is equivocal and requires explanation. The insurance company might have worded the condition thus : ' If he die by his own hands, whether sane or insane,' and then the meaning of the contract would have been clear."

Lord Ch. J. Tindall, who dissented from the judgment of his brethren in that case, in concluding a very able and elaborate opinion, said : " I therefore found the opinion at which I have arrived in this case upon the consideration that the insurers intended by the proviso to confine their exemption from liability to the case of a felonious suicide only ; that if they intended the exception to extend to both the case of felonious self-destruction, and self-destruction not felonious, they ought so to have expressed it clearly in the policy ; and that, at all events, if they have left it doubtful on the face of the policy, whether it is so confined or not, that doubt ought, in my opinion, to be determined against them, for it is incumbent on them to bring themselves within the exception, and if their meaning remains in doubt they have failed so to do."

While the propositions quoted are not authority, they serve to indicate the opinions of a very distinguished lawyer, and a very eminent judge, upon the precise question now before us for decision.

In the case of *Eastabrook* v. *The Union Mutual Life Insurance Company* (54 Maine, 224), where the proviso in the policy was, that if the assured should die by his own hand, the policy should be void, Appleton, Ch. J., said : " The different English life insurance companies (*when unwilling to incur the risk of suicidal insanity*) have guarded against such risk by language *clearly excluding it from the policy*. Thus, the Equitable has the condition, ' if he shall die by his own hand, being at the time sane or insane ; ' the Eagle, ' if he shall die by his own act, whether sane or insane ; ' and in the policies of the Solicitors and General Life Assurance the condition is, ' if he die by his own act, whether felonious or not.' "

This extract clearly indicates what the judgment of that court would have been if the condition in the policy before

us had been in the one there under consideration. We are referred to no case in this State where the provision contained in the present policy has been under consideration by the courts.

In the case of *Pierce* v. *The Travelers' Insurance Company* (3 Ins. L. J., 422 [June, 1874]) a question kindred to that involved in the present case came before the Supreme Court of Wisconsin. The condition in the policy was, that if the assured should " die by suicide, felonious or otherwise, sane or insane," it should be void. On the trial of the cause, the jury were charged that if the assured " took his own life while in an insane condition of mind, still the defendants are liable, notwithstanding the attempt to avoid the policy under such circumstances." Whatever nice criticism may be indulged in in respect to this direction to the jury, I think it presents, in a less artistic form, the precise proposition contended for by the learned counsel for the plaintiff in the case at bar. The jury were, in effect, told that the additional words " suicide, felonious or otherwise, sane or insane," did not excuse the insurance company, even if the death of the assured was the result of insanity. On an appeal taken, the Supreme Court of Wisconsin held the charge erroneous; and Dixon, Ch. J., in delivering the judgment of the court, says : " The intention here manifested is so plain as to seem incapable of further explanation, and unless there is something in the policy of the law which forbids such stipulation, we have nothing to do but to give effect to it ; for however the word 'suicide,' which is held by the authorities to mean the same thing as ' death by his own hand ' or 'take his own life ' might, if standing alone, be construed to imply a felonious self destruction, or self-destruction by a sane man, or one capable of understanding the nature and consequences of his own act, and of judging between right and wrong, it is obvious that it cannot be so received or applied here. Such construction is forbidden by the express words of the condition, which declares that it shall make no difference whether the suicide was felonious or otherwise, or whether the party committing it was sane or insane at

the time.   The parties here, therefore, by the very language of the condition, defined the sense in which they use the word, and by that definition the courts must be bound, unless there be something in the condition contrary to public policy or sound morals, which is not pretended."

Since the argument of this cause we have been referred, by the counsel for the defendant, to the unreported case of *Chapman* v. *The Republic Life Insurance Company of Chicago*, which recently came before the Circuit Court of the United States for the Northern District of Illinois, in which a question like the present was involved.   The words of the proviso in the policy, in that case, were, that if the death of the assured was caused "by his or her own act and *intention*, whether sane or insane," then the insured should not be liable.   The insured died from a pistol shot delivered from his own hand while in a completely insane state of mind and the insurance company were held not to be liable; the court approving the case of *Pierce* v. *The Travelers' Insurance Company*, before referred to.

So far, therefore, as we can be aided by judicial decisions, they appear favorable to views which are commended to our judgment.   We do not, however, place reliance upon them further than they appear to be fortified by reason.   We prefer to place our decision upon the ground that the words of the proviso in the policy before us, by plain rules of interpretation, exempts the defendant from liability.   That this language, in view of previous decisions, was inserted for such a purpose, cannot be doubted, and that it was agreed to by both the insured and the insurer is not questioned, and that it is a provision allowed by law, no one denies.   We are to say from these words what the parties must have intended, and we cannot properly say that additional words having no meaning were inserted in the contract, and if they mean any thing it is just what the words commonly import, and that is, if death ensues from any physical movement of the hand or body of the assured proceeding from a partial or total eclipse of the mind, the insurer may go free.   We are not altogether unmindful of the force of the

proposition that a man does not die by his own hand who has not sufficient mind to will his own death, and it is not, per- haps, entirely easy to see in what precise words in our language the idea may be accurately and artistically expressed that a totally insane man may take his own life. But the question seems to involve more — the refinement of language — than the application of practical sense, and we are of the opinion that, in the common judgment of mankind, it will be considered that when a totally insane man blows his brains out with a pistol that he will be said to have died by his own hand within the meaning of a policy such as we have now under consideration.

If the foregoing views are approved it appears not to be necessary to consider any other question in the case, as the plaintiff can never recover, unless upon the ground that the death of the assured was the result of pure accident. This question was somewhat argued, but, I think, not specially relied upon by the counsel for the plaintiff. If it was proper for the jury to consider the question in that aspect upon the evidence, it may be that the verdict of the jury was that the assured came to his death by mere accident, and if so the question already discussed is quite immaterial. But I am of the opinion that it was error to submit such a question to the jury, and to support this view I appeal to the charge of the learned judge given to them. He says: "I am asked by defendant's counsel to charge you that there is no evidence authorizing you to come to the conclusion that this act was accidental. There is very little evidence about it. *There is no evidence about it.*"

The last sentence taken from the learned judge's charge correctly indicates the state of the case. There was no evi- dence that the death of Gogorza was what we consider acci- dental, and no such question should have been submitted to the jury. The judge tells the jury that there is no evidence that the death was the result of accident, and yet says they may so find if they are thus minded. The proposition is quite at war with all our traditions of the common law of England,

as made a part of our system.   No verdict of a jury can be sustained in any court affecting the right of a party without, at least, the evidence of one credible witness.   Such is the law now, and such it has been for some centuries.   It is quite true that when a right has been established by satisfactory evidence a jury, in many actions, by force of the common law or by statute, may exercise a very large discretion as to damages without much evidence.   But when a legal right is to be established in a court of justice, it must be supported by some proper evidence.

If for no other reason, I should favor a new trial in this case for this very plain error.   But for other reasons a new trial must be granted.

Earl, C. (dissenting).   I do not think the judge erred in submitting to the jury the question, whether the death of the assured was caused by an accidental discharge of the pistol.   No witness was present when the pistol was discharged, and the precise circumstances under which the discharge took place are unknown.   We have the mental condition of the deceased; the facts that the pistol was purchased by his son without his knowledge; that he cautioned his son against leaving it about for fear of accident; that he did not know where it was kept, or that it was loaded; that he was wholly unfamiliar with its use, and had never been known to fire or use one; that it was a self-cocking pistol which would go off at a touch; and that the fatal wound was in his mouth.   While it is extremely improbable, from all the circumstances, that the discharge was purely accidental, in the ordinary sense of the term, the facts do not exclude such an hypothesis, and it was therefore proper for the judge to submit them to the jury.   (*Mallory* v. *The Travelers' Insurance Co.*, 47 N. Y., 52.)   There was nothing in the complaint or proofs of loss which absolutely precluded the plaintiff from claiming that the death was purely accidental, and there was no claim upon the trial that plaintiff was thus precluded.   As it is not claimed that the death of the assured by an accidental discharge of the pistol while in

his hand, was a death " by his own hand or act," within the meaning of the policy, it remains to be determined whether every case of self-destruction, not accidental, is, within the meaning of the policy, " a death by his own hand or act."

It is admitted by the learned counsel for the plaintiff that if the assured intentionally took his own life by his voluntary act, then the policy was avoided, whether he was sane or insane. But it is claimed by him that if his act of self-destruction was involuntary and unintentional, or caused by an irresistible impulse, then the death was not, within the meaning of the policy, " by his own hand or act."

It is matter of common observation that some insane persons can be influenced by motives ; that they can form intentions and act upon them, and that they can devise schemes and carry them out with great cunning and skill, and yet such persons may not be able to distinguish between right and wrong, may not be competent to bind themselves by contracts, or be legally responsible for crime. There are other insane persons who cannot form intentions, are unconscious of the physical consequences of their acts, cannot control their actions, and who act from irresistible impulse; such persons can no more be said to act than an automaton. If such a person should commit self-destruction, the event might, with some propriety, be called an accident. It is no more the act of the insane person than if he had been compelled to do. it by some irresistible external force.

The clause inserted in policies, that they should be void in case the assured died by his own hand or act, has been in common use for many years. It is supposed to have been inserted to deprive the assured of any motive to take his own life for the pecuniary benefit of his friends. It presupposes that the assured could be acted upon by motives, and was not intended for a case where motives could not operate, where intentions could not be formed, and where the acts of the assured were not under the control of his will. Such a clause would not invalidate a policy in case a pistol held in the hands of the assured should explode, or in case he should with his

own hand take a poison in the belief that it was medicine, because in such cases he does not, within the meaning and intent of the parties, die by his own hand. In such cases, it is more proper to say that the assured died by accident, rather than to say that he died by his own hand or act. But the act is no more within this clause of the policy, if the assured is insane, and labors under the insane delusion that a poison which he sees before him is a cordial, and under such delusion drinks it and dies; or if he is under the delusion that the water of the ocean is a bed of flowers, and throws himself into it and drowned; or if he, without knowing the nature of a pistol, unconsciously or involuntarily discharges its contents into his head and thus produces death. In all these cases the assured has no design or intention, and has been operated on by no motives. His death may fairly be attributed to disease; and the event has happened upon which the insurer has agreed to become liable and to pay.

The construction of this clause, and clauses similar to it, has frequently been before the courts. The earliest English case in which it received consideration is that of *Borradaile* v. *Hunter* (5 Man. & Grang., 639; 44 E. C. L., 335). In that case there was a proviso that the policy should be void "in case the assured should die by his own hands." The assured threw himself into the Thames and was drowned. Upon an issue whether the assured died by his own hands, the jury found that he "voluntarily threw himself into the water, knowing at the time that he should thereby destroy his life, and intending thereby to do so; but at the time of committing the act he was not capable of judging between right and wrong," and it was held, after much discussion, that the policy was avoided. In that case it was claimed, on the part of the plaintiff, that if the assured was, at the time of his self-destruction, in such a state of mind that he was morally and legally irresponsible for his acts, the proviso did not apply; but it was held that whether the assured was sane or insane, if he intended self-destruction and voluntarily threw himself into the river for that purpose, the policy was avoided. MAULE,

J., says the proviso ought to be construed so as "to include those cases of self-destruction in which, but for the condition, the act might have been committed in order to accelerate the claim on the policy and to exclude those in which the circumstances, supposing the policy to have been unconditional, would show that the act could not have been committed with a view to pecuniary interest." That case was approved and followed in *Clift* v. *Schwabe* (3 Man., Gran. & S., 438; 54 E. C. L., 437). In the latter case there was a clause in the policy that the policy should be void if the assured "should commit suicide." The assured voluntarily, and for the purpose of killing himself, took sulphuric acid and died. The claim, on the part of the plaintiff, was that the policy was not avoided unless the suicide was felonious and criminal, the assured being in such a state of mind that he would be civilly and criminally responsible for his acts. But the court held that the clause under consideration included all acts of voluntary self-destruction, and, therefore, that if the assured voluntary killed himself it was immaterial whether he was or was not at the time a responsible moral agent, sane or insane. These two cases are regarded as settling, in England, the construction of this and similar clauses in policies. In *Dean* v. *American Mutual Life Insurance Co.* (4 Allen, 96), there was a proviso that the policy should be void if the assured "should die by his own hand." He caused his own death by cutting his throat. The English cases were followed and it was held that inasmuch as the assured intended self-destruction, the policy was avoided, whether he was sane or insane. BIGELOW, Ch. J., said: "A party cannot be said to die by his own hand, in the sense in which these words are used in the policy, whose self-destruction does not proceed from the exercise of an act of volition, but is the result of a blind impulse of mistake or accident, or of other circumstances over which the will can exercise no control." In *Cooper* v. *Massachusetts Mutual Life Insurance Company* (102 Mass., 227) the policy contained a proviso that it should be void if the assured "die by suicide." He voluntarily hung himself, and the court

held that the plaintiff could not recover whether the assured was sane or insane. The plaintiff was defeated, because the death of the assured was his voluntary, intentional act. In *Eastabrook* v. *The Union Mutual Life Insurance Company* (54 Me., 224) the policy contained a proviso that it should be void " in case the assured shall die by his own hand." The assured committed suicide. The judge, at the trial, instructed the jury that if the assured was governed by irresistible or blind impulse in committing the act of suicide, the plaintiff would be entitled to recover. The verdict was for plaintiff, and the jury specially found " that the self-destruction was the result of a blind and irresistible impulse over which the will had no control," and that " the self-destruction was not an act of volition." The instruction of the judge was held to be right, and the finding of the jury was held to authorize the verdict. APPLETON, Ch. J., in writing the opinion of the court, went further than the facts of the case required or authorized, and held in conflict with the authorities above cited, that suicide by an insane person is never within the proviso, saying that " the insane suicide no more dies by his own hand than the suicide by mistake or accident." But the case of *Dean* v. *American Mutual Life Insurance Company* (*supra*) was approved, and we must assume that the decision was in fact based upon the facts presented by the record. In *American Life Insurance Company* v. *Isett's Administrators* (74 Penn. St., 176) the policy contained a similar proviso, and the assured shot himself. The court held that if the assured possessed sufficient mental capacity to form an intelligent intent to take his own life, and was conscious that the act he was about to commit would effect that object, it avoided the policy ; if, however, his mind was so far impaired that he was incapable of forming such an intent and was unconscious of the effect of the action upon his life, a recovery could be had.

This clause first came under consideration in this State, in the case of *Breasted* v. *The Farmers' Loan and Trust Company* (4 Hill, 73). In that case the assured committed suicide by drowning, and this fact the defendant plead as a defence.

The plaintiff replied that when the assured drowned himself he was of unsound mind, and wholly unconscious of the act. The case came up upon demurrer to this replication, and it was held that the plaintiff was entitled to judgment upon the demurrer. Nelson, Ch. J., said: "Speaking legally, self-destruction by a fellow-being bereft of reason can with no more propriety be ascribed to the act of his own hand than to the deadly instrument that may have been used for the purpose. The drowning of Comfort was no more his act, in the sense of the law, than if he had been impelled by irresistible physical power, nor is there any greater reason for exempting the company from the risk assumed in the policy, than if his death had been occasioned by such means."

This case again appears in 8 New York, 299, and both decisions are commented upon and explained in *Van Zant* v. *Mutual Benefit Life Insurance Company* (55 N. Y., 169). In the latter case the law, as announced in the English cases, was followed, and hence in this State, whatever doubt there may have been before, it must now be regarded as settled that when a policy contains a proviso that it shall be void in case the assured shall die by his own hand, a death by the voluntary, intentional act of the insured, whether he was sane or insane, avoids the policy; but self-destruction by the assured when his mind was so disordered that he did not know that the act committed would cause death, when he could form no intention and be influenced by no motive, or when he was under the influence of some insane impulse which he could not resist, does not avoid the policy. The case of *Life Insurance Company* v. *Terry* (15 Wall., 580) is also commented on in that case, and the judgment therein is shown really not to be in conflict with that decision.

Since this clause first came under consideration in England there has been in England and this country, among judges and text writers, a difference of opinion as to its construction. On the one hand it has been claimed that self-destruction by an insane person who was incapable of distinguishing between right and wrong and who would not be responsible for the

act if committed upon another was, in all cases, without the proviso. On the other hand it has been claimed that self-destruction was taken out of the proviso only in case the assured was influenced to the act by an irresistible impulse, or was in such a state of mind that he could not intend his own death or know that the act which he committed would produce death. The supporters of both of the constructions which have been given to this clause rest upon the ground that the death was not by the hand of the assured, and under either construction the death of Mr. Gogorza was not by "his own hand or act" if these words alone had been in the proviso.

But we have here two words superadded, "sane or insane," to the other words which were under consideration in the cases to which we have thus far referred, and it is claimed, on the part of the defendant, that these two words make a marked difference. The claim is, that under this policy every case of self-destruction not purely accidental, whether the assured at the time was sane or insane, is within the proviso and avoids the policy. I am of opinion that this claim is not well founded. I am not clear for what particular purpose these two words were added. They can have no application in any case, unless the assured died by his own hand. Here, according to all the authorities, the assured did not die by his own hand, and hence these words can have no force. There is some force in the claim made on the part of the defendant that the words "sane or insane" which have recently been added to the other words, which have for many years been found in policies, must be given some meaning in the clause under consideration; that meaning must, if possible, be given to all the language used. It may be that they are used simply to make certain that mere insanity shall not take a case of self-destruction out of the proviso. With the clause as written every case of voluntary intentional self-destruction is within the proviso whether the assured was sane or insane; but the proviso does not apply to a case where the act of self-destruction was not voluntary or intentional. Such a case would

properly be classified with accidents. It is conceded that this proviso, as now written, does not apply to the case of unintentional death of a sane man by his own hand, such a death being accidental. No more should it apply to an unintentional death of an insane man by his own hand.

Upon the argument of this case, our attention was called to the case of *Pierce* v. *Travelers' Insurance Company* (decided in the Supreme Court of Wisconsin in April, 1874, and reported in 3 Insurance Law Journal, 422), as a case where the main question involved upon this appeal was under consideration. The policy in that case contained a condition that it should be void in case the assured died " by suicide, felonious or otherwise, sane or insane." The court, at the trial, charged the jury that if the assured " took his own life while in an insane condition of mind, still the · defendants are liable, notwithstanding the attempt to avoid the policy under such circumstances." The Supreme Court held this charge to be erroneous, and granted a new trial. DIXON, Ch. J., writing the opinion, said " that the construction and effect of the condition must be the same as that which was given by the majority of the court to the exception in the policy in the leading case of *Borradaile* v. *Hunter*." He classifies the unintentional death of insane persons who commit self-destruction while unconscious of their acts, or unable to control them, among accidents; and he says: " The condition here relieves the company from liability only where the self-destruction was intentional, or committed by a party who was conscious of the nature of the act he was committing, or about to commit, and conscious of the direct and immediate consequences, and this notwithstanding the act may have been unaccompanied by any criminal or felonious intent or purpose. It does not apply or relieve the company when the death of the assured was accidental, or may be properly said to have been caused by accident, though brought about, it may have been, by his own hands, or by some dangerous or destructive instrument held in them." That case is not, therefore, in conflict with the views above expressed, but is in entire harmony with them. The

words " felonious or otherwise, sane or insane," used in the policy in that case, could have no force until there was a case of suicide to which they could be applied, and a case of self-destruction by one incapable of forming any intention, and unconscious of his acts or unable to control them, could not properly be called a suicide.   (*Clift* v. *Schwabe, supra.*)

The language which would nullify a life policy in case the brain of the assured became so diseased and his mind so disordered that he should unconsciously or unintentionally, or from an irresistible impulse, take his own life, should be such as clearly to show that such was the intention of the parties. It is at least true that the language used in the policy under consideration does not clearly manifest such an intention.

It is claimed that, under the construction we have given to the words in this policy, no insurance company could use words that would shield it from liability in the case of the self-destruction of a person so insane as to be incapable of forming an intention or controlling his acts.   I cannot perceive the difficulty.   If it should be provided that the policy should be avoided " in case of suicide, or death of the assured resulting from insanity," or " in case of the self-destruction of the assured while insane, whether he was conscious of or intended the act of self-destruction or not," or " in case the assured shall consciously, intentionally and voluntarily take his own life, whether he was sane or insane," I think there could be no dispute as to the meaning.   If either of the first two provisos had been in this policy, the defendant would have been exempted from liability ; if the last proviso had been in, the construction would have been that which I have given.   But it is unnecessary to determine the effect of any supposed language until an actual case is presented for decision.

Our attention has been called, since the argument, to the unreported case of *Chapman* v. *The Republic Life Insurance Company of Chicago*, decided in the Circuit Court of the United States for the northern district of Illinois.   In that case the assured shot himself, and the policy contained a proviso exempting the insurance company from liability in case the

death of the assured was caused " by his own act and intention." To give effect to this proviso, it seems to me too clear for reasonable dispute that the assured must have caused his death by his own act and intention, that is, by his intentional act; and that the self-destruction of the assured when he was incapable of forming any intention would be without the proviso; and yet it was held in that case that the self-destruction of the assured while he was unconscious of his act, and incapable of forming any intention, exempted the company from liability. That decision should certainly receive no countenance as authority, and I believe it has no support anywhere, except in the court in which it was rendered.

The judgment should therefore be affirmed, with costs.

For reversal: LOTT, Ch. C., REYNOLDS and GRAY, CC.; for affirmance: EARL and DWIGHT, CC.

Judgment reversed.