## JOSEPH H. EASTABROOK *versus* THE UNION MUTUAL LIFE INSURANCE COMPANY.

The condition in a policy of life insurance, " that in case the insured shall die by his own hand, or in consequence of a duel, or the violation of any state, national or provincial law, or by the hands of justice, this policy shall be null, void and of no effect," does not include suicide by an insane man in a fit of insanity.

ON EXCEPTIONS.

There was also a motion to set aside the verdict as against evidence, but no question of law was raised in connection with it.

ASSUMPSIT on a policy of insurance on the life of Joseph H. Eastabrook, jr.

The policy contained the following provision, " that in case the said Joseph H. Eastabrook, jr., shall die by his own hand, or in consequence of a duel, or the violation of any state, national or provincial law, or by the hands of justice, this policy shall be null, void and of no effect."

The insured committed suicide, and the plaintiff alleged, and offered evidence tending to prove, that it was done in a fit of insanity.

The presiding Judge instructed the jury, *inter alia*, that, if the insured was governed by irresistible or blind impulse in committing the act of suicide, the plaintiff would be entitled to recover.

The verdict was for the plaintiff, and the jury found specially " that the self-destruction was the result of a blind and irresistible impulse over which the will had no control," and that " the self-destruction was not an act of volition ;" and the defendants excepted.

*Thacher*, for defendants.

*A. S. Rice*, for plaintiff.

APPLETON, C. J. — The plaintiff effected an insurance upon the life of his son, Joseph H. Eastabrook, jr., who in

Eastabrook *v.* The Union Mutual Life Ins. Co.

a fit of insanity on the 30th. day of July, 1864, committed suicide.

In the policy there is an express condition "that in case the said Joseph H. Eastabrook, jr. * * shall die by his own hand, or in consequence of a duel, or the violation of any state, national or provincial law, or by the hands of justice, * * this policy shall be null, void and of no effect."

Is suicide by an insane man in a fit of insanity within the above condition?

Upon this question there has been a great diversity of judicial opinion. In England, the majority of the Court of Common Pleas, in *Borradaile* v. *Hunter*, 5 Man. & Gran., (44 E. C. L.,) 637, held that a policy containing a proviso that in case "the assured should die by his own hand or by the hands of justice, or in consequence of a duel," was avoided, though the assured at the time of committing the act "was not capable of judging between right and wrong." In *Clift* v. *Schwabe*, 3 Man., Gran. and Scott, (54 E. C. L.,) 437, the language of the policy was that "every policy effected by a person on his or her own life should be void, if such person should commit suicide or die by duelling or the hands of justice." It was held, by the majority of the Court, that it was immaterial whether the assured at the time of his self-destruction was or was not a responsible moral agent. "It will, however, be observed, that the authorities against this decision are very strong. POLLOCK, C. B., and WIGHTMAN, J., dissented from it and to them may be added CRESWELL, J., in the Court below, and it may be inferred that TINDALL, C. J., and ERSKINE, J., would have done so on the authority of *Borradaile* v. *Hunter;* ALEXANDER, C. B., and Lord TENTERDEN, C. J., from their decisions at *Nisi Prius*, in the unreported cases cited in the notes to that case; and perhaps Lord St. LEONARDS, C., who, referring to the principal case, adds in a note "*sed quere* the decision." Bunyon on Life Assurance, 75. In this country there will be found a similar variety of opinion. In

*Breasteed* v. *The Farmer's Loan and Trust Co.*, 4 Hill, 74, the Supreme Court of New York held that the words " shall die by his own hand," have reference to an act of criminal self-destruction. This view of the law was sustained upon appeal. S. C. 4 Selden, 299. The Supreme Court of Massachusetts, in *Deane* v. *American Mutual Life Insurance Co.*, 4 Allen, 96, decided that suicide, committed by a person who understood the nature of the act and intended to take his own life, though committed during insanity, avoids a policy which provides that it shall be void if the assured shall die by his own hand. In this conflict of authority, it may not be amiss briefly to examine the question, and to endeavor to determine what conclusion will best accord with the object of the policy, and with the intent of the parties as ascertainable from its language upon the recognized principles of interpretation.

An insurance upon life is of comparatively recent date. A creditor may insure upon the life of his debtor, or one may insure upon his own life, for the benefit of his family. In no event, can the person upon whose life the policy is effected, be benefitted by his own death. Death, whether by disease, by accident, or the result of insanity, is in each case within the general object of the policy.

The terms " suicide" and " dying by one's own hand," are generally used synonomously. Sometimes one form of expression is used and sometimes the other. They have the same meaning. Dying by one's own hand is but another form of expression for suicide.

The phrase " die by his own hand," may include all cases of death by the person upon whose life the policy is effected, or it may receive limitations. If limitations, then the inquiry arises as to the extent of those limitations. The authorities concur in this, that the expression does not embrace all cases of death by one's own hand. If the insured kill himself by drinking poison, not being aware that it was poison, or by snapping a loaded pistol, ignorant that it was

loaded, or by leaping from a window in the delirium of a fever, it is conceded that he would not die by his own hand, within the meaning of the clause under consideration, though he might literally die by his own hand, that is, by his own act.

"It is to be observed," remarks TINDALL, C. J., in *Borradaile* v. *Hunter*, "that the words of the proviso are the words, not of the assured, but of the insurers, introduced by themselves for the purpose of their own exemption and protection from liability; both in reason and good sense, therefore, no less than upon the acknowledged principles of legal construction, they are to be taken most strongly against those who speak the words, and most favorably for the other party. For, it is no more than just, that if the words are ambiguous, he, whose meaning they are intended to express, and not the other party, should suffer by the ambiguity." That they are ambiguous is conceded, for the courts in no case have given them a literal construction. When death is the result of insanity, it is equally the result of disease for which the insane is in no respect responsible. It is a well settled physiological principle, "that disturbed intelligence has the same relation to the brain that disordered respiration has to the lungs and pleura." Death, then, by an insane suicide, is as much death by disease as though it were death by fever or consumption. Death by accident or mistake, though by the party's own hand, is not within the condition. Death by disease is provided for by the policy. Insanity is a disease. Death the result of insanity, is death by disease. The insane suicide no more dies by his own hand than the suicide by mistake or accident. If the act be not the act of a responsible being, but is the result of any delusion or perversion, whether physical, intellectual or moral, it is not the act of the man. "If they, (the insurers,) intended the exception to extend both to the case of felonious self-destruction and self-destruction not felonious, "they ought," observes TINDALL, C. J., in *Borradaile* v. *Hunter*, "so to have expressed it clearly in the

policy ; and that, at all events, if they have left it doubtful on the face of the policy whether it is so confined or not, that doubt ought, in my opinion, to be determined against them ; for it is incumbent on them to bring themselves within the exception, and, if their meaning remains in doubt, they have failed so to do."

The different English Life Insurance Companies, (when unwilling to incur the risk of suicidal insanity,) have guarded against such risk by language clearly excluding it from the policy. Thus, the Equitable has the condition, " if he shall die by his own hand, being at the time sane or insane ;" the Eagle, " if he shall die by his own act, whether sane or insane." In the policies of the Solicitors and General Life Assurance, the condition is, if he die by his own act, " whether felonious or not."

The policy, in the clause under consideration, refers to death by his own hand, or in consequence of a duel or the violation of any state, national or provincial law, or by the hands of justice. All the other cases, after the first, involve criminal delinquency. They involve intentional misdoing. They assume criminal intention. They are cases where death occurs in consequence of committing a felony or other violation of law on the part of the insured. There must in all be moral as well as legal responsibility. *Nocitur a sociis* is a familiar maxim in the interpretation of covenants. The other members of the sentence, connected with the verb " die," imply death as the result of crime committed by a responsible being. The first of these conditions, to which the others refer, and with which they are connected, must equally with the other refer to a felonious death, to the case of *felo de se*, not to the case of a death without legal or moral blame, — the result of accident, mistake or disease.

The madman, who in a fit of delirium commits suicide, as much dies by his own hand as does the individual who accidentally and unintentionally takes his own life. They each die by their own hands, but without moral responsibility or legal blame. One is no more within the conditions

Eastabrook *v.* The Union Mutual Life Ins. Co.

of the policy than the other. In each case, it should receive the same construction.

That a jury would be likely to regard suicide as proof of insanity does not affect the conclusion. If suicide is to be regarded as evidentiary of insanity, as it unquestionably is in most cases, then they generally arrive at correct results. If it is not properly to be so regarded, it may be an argument against a trial by jury, that the tribunal is one which allows itself to be governed by its prejudices rather than by the proofs, but it is none against the construction of the policy, that death by the hands of the insured, whether by accident, mistake, or in a fit of insanity, is to be governed by one and the same rule.

Nor does the case of suicide, by one insane, fall within the danger, to guard against the occurrence of which, this condition was inserted. "A policy," observes MAULE, J., in *Borradaile* v. *Hunter*, "by which the sum insured is payable on the death of the person assured in all events, gives him a pecuniary interest that he should die immediately, rather than at a future time, to the extent of the excess of the value of a present payment over a deferred one, and offers a temptation to self-destruction to that extent. To protect the insurers against the increase of risk arising out of this temptation, is the object for which the condition in question is inserted." The reason here given assumes, or presupposes, sanity on the part of the assured. It implies a motive acting upon a sane mind, for sanity in all cases is to be presumed. But, in fact, there is very slight foundation for any such reasoning. The person whose life is insured never receives money payable after his death. Suicide for the benefit of others is rare, exceptional and Quixotic. The love of life, the strongest sentiment of our nature, affords reasonable security against a danger so remotely probable. An insane man would be little likely to calculate the difference in value between a payment to be made immediately and one indefinitely deferred, and kill himself that some one else might receive the money at an earlier

date in consequence of his committing suicide. The evidence affords not the slightest indication that any such motive had any influence in the present case.

Where the policy is on the life of a nominee, as in the one under consideration, " the insurance can be no inducement to a criminal act, and may reasonably be construed to cover this as well as every other risk. There is, indeed, no reason why it should not do so ; for the general tables of mortality, which form the basis of the calculations upon which the policy is founded, include this as well as every other cause of death ; so that the particular risk is actually insured against." Bunyon on Life Insurance, 73.

But, whether these views are correct or not, the defendants had the benefit of instructions in entire conformity with the law, as stated by the Supreme Court of Massachusetts, in *Deane* v. *Am. Mutual Life Insurance Company*, and the jury have, on the evidence, found the facts such, as in accordance with the law of that cause, would justify their verdict.                    *Motion and exceptions overruled.*

WALTON, DICKERSON, BARROWS, DANFORTH and TAPLEY, JJ., concurred.

KENT, J., dissented.