ADKINS v. COLUMBIA LIFE INSURANCE COMPANY, *Appellant.*

**Life Insurance**: SUICIDE: SANE OR INSANE. It was provided in a policy of life insurance that in case of the death of the insured "by his own act or intention, whether sane or insane," the company should only be liable for the net value of the policy at that time. *Held*, that this provision embraced an intentional self-destruction by an insane man, provided the latter, at the time of causing his own death, was conscious of the physical nature and consequences of his act, and intended to destroy his life, though he was not conscious of the moral guilt or criminality of the act.

*Appeal from Henry Circuit Court.*—HON. FOSTER P. WRIGHT, Judge.

REVERSED.

*Waldo P. Johnson* for appellant.

*F. E. Savage* and *W. L. Stewart* for respondent.

HOUGH, J.—This was an action on a policy of insurance issued to the plaintiff on the life of her husband, Henry G. Adkins. It appears from the agreed statement on which this cause has been submitted, that said Adkins committed suicide; "that at the time he committed suicide he was insane; that his mind was so far impaired that he did not understand the moral character, the general nature and consequences of the act; and that the act of self-destruction was the result of his insane condition of mind." The policy sued on contains the following clause and exception, to-wit: "Provided, always, and it is hereby declared to be the true intent and meaning of this policy, and the same is accepted by the assured upon these express conditions: That in case of the death of said insured by his own act and intention, whether sane or insane, or by the use of intoxicating drinks, opiates or narcotics, it is expressly stipulated and agreed by all parties in interest that the company shall not be liable for the sum insured by said policy, but the company will pay, and the parties

in interest will accept, in full discharge and satisfaction of said policy, a sum equal to the net value of this policy at the time of the death of said insured, computed on the American Table of Mortality, with interest at six per cent." The defendant admitted it was liable for the net value of the policy at the time of the death of the insured, and tendered the same in court with costs, which was refused. The plaintiff recovered judgment for the full amount of the policy, and the defendant has appealed.

The rights of the parties depend upon the meaning to be attached to the words "in case of the death of said insured by his own act and intention, whether sane or insane," contained in the clause of the policy above quoted.

In the leading case of *Borradaile v. Hunter*, 5 Man. & Gr. 639, the words avoiding the policy were "in case the assured shall die by his own hands." The court declared these words to be equivalent to the words "shall die by his own act," and held that as the assured had intentionally destroyed himself, though he was at the time incapable of distinguishing between right and wrong, the policy was void. It appeared from the evidence in that case that Mr. Borradaile threw himself from the parapet of Vauxhall bridge into the river Thames and was drowned. Erskine, J., said the words of avoidance "were large enough to include all intentional acts of self-destruction whether criminal or not, if the deceased was laboring under no delusion as to the physical consequences of the act he was committing; if he knew that it was water into which he was about to throw himself, and that the consequence of his leaping from the bridge would be his death, and if he voluntarily threw himself from the bridge into the river, intending by so doing to drown himself, the question whether he had thereby been guilty of a crime as *felo de se*, or whether, if he had at that time destroyed the life of another instead of his own, he was in a state of mind to be morally and legally responsible for his acts, was irrelevant to the question before the jury; that the state of mind of

the assured was only material for the purpose of ascertaining whether the act of self-destruction was a voluntary and willful act for the purpose of destroying his life."

This decision was afterwards followed in *Clift v. Schwabe*, 3 Man., Gr. & Scott 438, and in *Dufaur v. Professional Life Ins. Co.*, 25 Beav. 599. The rule thus established in England has been adopted in this country in the following cases: *Dean v. Mutual Life Ins. Co.*, 4 Allen 96; *Cooper v. Mass. Mutual Life Ins. Co.*, 102 Mass. 227; *Nimick v. Mutual Benefit Life Ins. Co.*, 1 Big. Ins. Cas. 689; *Gray v. Union Mutual Life Ins. Co.*, 2 Big. 4, and *Van Zandt v. Mutual Benefit Life Ins. Co.*, 55 N. Y. 169. The case of *American Life Ins. Co. v. Isetts, Admr.*, 74 Pa. St. 176, virtually supports the rule, but the case of *Hartman v. Keystone Ins. Co.*, 21 Pa. St. 466, merely decides that if the insured committed suicide by swallowing poison, he died by his own hand. The rule is denied in *Eastabrook v. Union Ins. Co.*, 54 Me. 224, and in *Life Ins. Co. v. Terry*, 15 Wall. 580. The case of *Breasted v. Farmers' Loan & Trust Co.*, 4 Sel. 299, has been cited by Justice Hunt in *Life Ins. Co. v. Terry*, as being in opposition to the rule laid down in *Borrodaile v. Hunter*, but it has been satisfactorily shown by the court of appeals of New York in *Van Zandt v. M. B. Life Ins. Co.*, that there is no real conflict between those cases.

In the case of *Life Ins. Co. v. Terry*, the words of avoidance were, "shall die by his own hand," and the court held that these words referred to an act of criminal self-destruction only, and not to the voluntary death of one who did not realize or understand the moral quality of his act. The court said: "If the death is caused by the voluntary act of the assured, he knowing and intending that his death shall be the result of his act, but when his reasoning faculties are so far impaired that he is not able to understand the moral character, the general nature, consequences and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse which he

has not the power to resist, such death is not within the contemplation of the parties to the contract, and the insurer is liable."

The words, " by his own act and intention," used in the policy before us, are equivalent to the words, " by his own hand," and as to the meaning to be given these words, when standing by themselves, there is, as an examination of the cases cited will show, an irreconcilable conflict of opinion; those on one side maintaining that the policy would be avoided if the assured, at the time of causing his own death, was conscious of the physical nature and consequences of his act, and intended thereby to put an end to his own life, and those on the other side maintaining that the policy would not be avoided unless the insured were also conscious of the moral quality or criminality of such act. The policy before us, however, goes farther than any of those considered in the foregoing cases, and provides that it shall be void if the assured shall die "by his own act and intention, sane or insane;" and if it be permissible for life insurance companies to insert such a stipulation in their policies, it is manifest that the only question which can arise thereon, in the event of the suicide of the insured, is whether the act of self-destruction was intentional, or, in the words of Erskine, J., whether it was " the voluntary and willful act of a man having at the time sufficient powers of mind and reason to understand the physical nature and consequences of such act, and, having at the time a purpose and intention to cause his own death by that act ; and the question whether he was, at the time, capable of understanding and appreciating the moral nature and quality of his purpose, is not relevant to the inquiry, further than as it might help to illustrate the extent of his capacity to understand the physical character of the act itself."

The words, " by his own act and intention," are, as has already been said, equivalent to the words of avoidance construed by the Supreme Court of the United States

in the case of *Life Ins. Co. v. Terry*, and the addition thereto of the words " sane or insane," in the policy before us, conclusively shows that it was the purpose of the defendant in this case to avoid the risk of intentional self-destruction by an insane man; and we are of the opinion that the addition of these words is adequate to the accomplishment of that purpose.  It has been expressly so decided by the Supreme Court of the United States in a very lucid opinion by Mr. Justice Davis in the case of *Bigelow v. Berkshire Life Ins. Co.*, 3 Otto 284.  To the same effect, also, are *Pierce v. Travelers Life Ins. Co.*, 34 Wis. 389, and *Chapman v. Republic Life Ins. Co.*, 5 Big. L. & A. Cas. 110.  The commission of appeals of New York in the case of *De Gogorza v. Knickerbocker Life Ins. Co.*, 65 N. Y. 232, go farther than the Supreme Court of the United States in the *Bigelow* case, and hold that a policy which provides that the insurer shall not be liable if the assured " shall die by his own hand or act, sane or insane," is avoided, " if death ensues from any physical movement of the hand or body of the assured proceeding from a partial or total eclipse of the mind."

The rule laid down by the Supreme Court of the United States in the *Bigelow* case, is the rule which we think is properly applicable to the policy now under consideration.   While the words, " his own act and intention " have been construed to mean no more than the words, " his own act," on the ground that the word " act " necessarily implies intention ; (*Chapman v. Republic Life Ins. Co.*,) yet the addition of the word " intention " shows that the parties were solicitous to avoid all question as to whether the policy was to be avoided by the physical act simply of the assured when unaccompanied by any corresponding intellectual purpose or act of the mind.

Nor do we see any reason why a life insurance company may not stipulate against voluntary and intentional self-destruction.   The courts have repeatedly recognized their right to stipulate against numerous kindred risks, and we

see no difference in principle between stipulating against a voluntary death by poison or by violence, and a voluntary death by opium or habitual drunkenness. In either case the avoidance of the policy proceeds upon the theory that it was within the power of the assured to avoid death by such instrumentalities, and, therefore, his duty to do so.

Thee is some difficulty, however, in applying to the admitted facts of this case, the construction which we have given to the language of the policy here sued on, in consequence of a want of perspicuity in the language of Mr. Justice Hunt in *Terry v. Life Ins. Co.* heretofore quoted, a portion of which has been adopted by the parties to this suit as descriptive of the state of mind of the insured at the time of his death. We think with Rapallo, J., (*Van Zandt v. Mutual Ben. Life Ins. Co., supra,*) that this passage literally construed includes several conditions which cannot co-exist. We copy his comment : "It can be conceived that the act might have been voluntary and the self-destruction intentional, though the assured failed to appreciate its moral character ; but it is difficult to conceive how the act could have been voluntary and intentional, where the faculties of the deceased were so impaired that he was not able to understand 'the general nature, consequences and effect of the act he was about to commit,' or when he was impelled thereto by an insane impulse which he had not the power to resist." In order to make the extract from the opinion of Justice Hunt consistent with itself, the words " general, nature, consequences and effect of the act," must be taken to be an amplification of the words " moral character," immediately preceding, and to refer to the moral nature, moral consequences and effect of the act ; and the last alternative must be regarded as an independent statement of the manner of the death of the assured, because it is impossible that the death could be caused by the voluntary act of the assured when he was "impelled thereto by an insane impulse which he had not the power to resist." Besides, this is evidently the construction put upon this

passage by the Supreme Court of the United States in the subsequent case of *Bigelow v. Berkshire Life Ins. Co.* The language of the agreed statement denoting the state of mind of the assured having been adopted from the opinion in *Terry v. Ins. Co.*, must be regarded as having been used by the parties in the sense in which it was employed in that opinion, and as it appears from such statement so construed, that the mind of the assured was only so far impaired that he did not understand the moral quality and consequences of his act, it follows from the views we have expressed that the defendant is not liable for the full amount of the policy. The judgment will, therefore, be reversed and the cause remanded, with directions to the circuit court to enter a judgment against the defendant for the net value of the policy at the time of the death of the insured. All concur.