## EDITH AUFRICHTIG v. COLUMBIA NATIONAL LIFE INSURANCE COMPANY, Appellant.

### Division One, April 6, 1923.

1. **ACCIDENT INSURANCE:** Burden. In an action on an accident insurance policy the burden is on plaintiff to show that the death of the deceased was the result of an accident; that is, that he came to his death by and through accidental means.

2. ———: **Suicide: Insanity.** Self-destruction by an insane person is death by accidental means. Self-destruction by the insured while insane is not suicide or intentional self-destruction, but an accidental death.

3. ———: ———: ———: Contract Against **Unintentional Self-Destruction.** Absent a statute on the subject, an accident insurance company may contract against liability upon the condition that the insured die by his own hand or his own act while insane, even though such death would be accidental, and not intentional self-destruction.

4. ———: ———: ———: ———: **Avoided by Statute.** The statute (Sec. 6150, R. S. 1919), first enacted in 1879, declares that "in all suits upon policies of insurance on life, . . . it shall be no defense that the insured committed sucide, unless it shall be shown . . . that the insured contemplated death at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void." *Held*, first, to have no application to the self-destruction of the insured while sane, because under an accident policy self-destruction while sane is not an accident, and therefore is not covered by the usual general terms of an accident pólicy; *second*, self-destruction by the insured while insane is an accident, and an exception in the policy exempting the company from liability if the insured came to his death by such accidental means is invalid and avoided by said statute, and, *third*, the statute applies to such a policy, and makes void "any stipulation" in the policy exempting the company from liability if the insured died by his own act while insane.

5. ———: **Vexatious Delay: Attorney Fee.** In an action on an accident insurance policy, that part of the verdict allowing plaintiff a fee for the services of her attorney cannot stand under the statute (Sec. 6337, R. S. 1919), which is penal and should be strictly construed, unless there was some substantial evidence showing vexatious delay on the part of defendant in paying the policy; and vexatious delay is not established by a mere vigorous defense to the action, or by an appeal·from the judgment, where the main issue was whether the insured was insane at the time he took cyanide of potassium, and there were facts indicating that he was not insane, and that defendant in good faith attempted to show he was not, both at the trial and in the appellate court.

6. ———: **Instructions: Conflicting: Not Pointed Out.** To obtain a review of the instructions it is not sufficient to simply make the point that "instructions improperly given on behalf of plaintiff are not cured by defendant's instruction." To be available some point must be made that plaintiff's instructions were erroneous, and wherein erroneous, and wherein plaintiff depends on defendant's instructions for aid.

Appeal from St. Louis City Circuit Court.—*Hon. Karl Kimmel,* Judge.

AFFIRMED (*upon condition*).

*Leahy & Saunders* for appellant.

(1) The presumption is in favor of a person's sanity, and the burden of proof, is upon the one asserting the contrary. Insurance Company v. Rodel, 95 U. S. 232; Reynolds v. Maryland Casualty Co., 274 Mo. 83. (2) The evidence shows conclusively that there was no accident within the meaning of the policy. Lovelace v. Travelers' Protective Assn., 126 Mo. 104; Young v. Ry. Mail Assn., 126 Mo. App. 325; Gates v. Travelers' Ins. Co., 218 S. W. 927; Scales v. Insurance Co., 212 S. W. 8; Rollins v. Business Men's Assn., 213 S. W. 52; Lamport v. Ins. Co., 199 S. W. 1024; Laessig v. Travelers' Assn., 169 Mo. 280; Williams v. Accident Assn., 133 N. Y. 366; Aetna Life Ins. Co. v. Vandecar, 86 Fed. 282. (3) Plaintiff utterly failed to show insanity within the meaning of an insurance policy. Borradaile v. Hunter, 5 Man. & Gr. 639; Benoist v. Murrin, 58 Mo. 323; Adkins v. Columbia Life Ins. Co., 70 Mo. 27; Sparks v. Indemnity Co., 61 Mo. App. 109; Clift v. Schwabe, 3 Man. Gr. & Scott, 438; Dufaur v. Professional Life Ins. Co., 25 Beav. 599; Dean v. Mutual Life Ins. Co., 4 Allen (Mass.) 96; Cooper v. Mass. Mutual Life Ins. Co., 102 Mass. 227; Nimick v. Mutual Life Ins. Co., 1 Big. Ins. Cas. 689; Gray v. Union Mutual Life Ins. Co., 2 Big. 4; Van Zandt v. Mutual Benefit Life Ins. Co., 55 N. Y. 169; American Life Ins. Co. v. Isetts Admr., 74 Pa. St. 176; Biglow v. Berkshire Life Ins. Co., 3 Otto, 284; Pierce v. Travelers' Life Ins. Co., 34 Wis. 389; Chapman v. Republic Life Ins. Co., 5 Big. L. & A. Cas. 110; De Gorgorza v. Knickerbocker Life Ins. Co., 65 N. Y. 232; Masonic Life Assn. v. Pollard's Guardian, 89 S. W. 219; Sabin v. Senate of the National Union, 90 Mich. 177; Fowler v. Mutual Life Ins. Co., 4 N. Y. (Lansing) 202; Supreme Council of Royal Arcanum v. Wishart, 192 Fed. 453; Commonwealth v. Wireback, 190 Pa. St. 138; Foreman's Will, 54 N. Y. 274; Banks v. Goodfellow, L. R. 5 Q. B. 549, 39 L. R. J. B. 237; Jenkins v. Morris, 14 Ch. D. 674, 42 L. T. Rep. (N. S.) 817; Smee v. Smee, 5 P. D. 84, 44 J. P. 220, 28 Wkly. Rep. 703; State v. Spencer, 21 N. J. L. 196; McNaughten's Case, 10 C. L. F. 200, 8 Eng.

Reprint 718; Duffield v. Morris, 2 Harr. 375; Mutual Benefit Life Ins. Co. v. Davies, 87 Ky. 541; Knickerbocker Life Ins. Co. v. Peters, 42 Md. 414; Phadenhauer v. Germania Life Ins. Co., 7 Heisk. 567; 22 Cyc. 1238; Weed v. Mutual Life Ins. Co., 70 N. Y. 561. (4) The closing argument of counsel for the plaintiff was highly improper, inflammatory and prejudicial to the interests of defendant, and this together with the fact that the plaintiff sat before the jury weeping justified the granting of a new trial. (5) The form of the verdict was improper; there was no evidence of a vexatious refusal to pay; the jury improperly allowed attorneys' fees, although the jury found no damages for vexatious refusal to pay. Non-Royalty Shoe Co. v. Phoenix Insurance Co., 277 Mo. 399, 21 S. W. 42; Patterson v. Insurance Co., 174 Mo. App. 44; Kellar v. Insurance Co., 198 Mo. 440; Rollins v. Business Men's Accident Assn., 220 S. W. 1022, 213 S. W. 52; Berryman v. Maryland Motor Car Ins. Co., 204 S. W. 738; Merkel v. Railway Mail Assn., 226 S. W. 229. (6) Instructions improperly given on behalf of plaintiff are not cured by defendant's instructions. Bellows v. Ins. Co., 203 S. W. 985; Hall v. Coal Co., 260 Mo. 351; State ex rel. v. Ellison, 272 Mo. 583.

*Jones, Hocker, Sullivan & Angert, Amici Curiae,* also for appellant.

*Sale & Frey* and *Charles M. Hay* for respondent.

(1) Death due to cyanide of potassium taken while insane is within the purview of the policies in suit insuring against "loss resulting from bodily injuries effected directly and independently of all other causes through accidental means." Brunswick v. Ins. Co., 278 Mo. 154, 7 A. L. R. 1213; Andrus v. Bus. Men's Accident Assn., 283 Mo. 442; Woodlock v. Aetna Life Ins. Co., 225 S. W. 1000. Scales v. Natl. Life & Acc. Ins. Co., 212 S. W. 8; Newell v. Ins. Co., 212 S. W. 991. (a) The provision in the accident policies in suit denying liability where death

results from ''self-destruction while insane'' is void. Sec. 6150, R. S. 1919; Sec. 6945, R. S. 1909; Cases cited above. (b) It is conceded by appellant that the death of the insured (respondent's husband) was due to cyanide of potassium taken by the insured. The overwhelming evidence established and the jury found that the deadly drug was taken while the insured was insane. Respondent was therefore entitled to recover. (2) Death by suicide of an insane person is death by accident. Cases supra; Mutual Life Ins. Co. v. Terry, 82 U. S. 580, 21 L. Ed. 236; Charter Oak Life Ins. Co. v. Rodel, 95 U. S. 232, 24 L. Ed. 433; Manhattan Life Ins. Co. v. Broughton, 109 U. S. 121, 27 L. Ed. 878; Conn. Mutual Life Ins. Co. v. Lathrop, 111 U. S. 612, 28 L. Ed. 536; Accident Insurance Co. v. Crandal, 120 U. S. 527, 30 L. Ed. 740; Ritter v. Ins. Co., 169 U. S. 139, 42 L. Ed. 693; Conn. Mutual Life Ins. Co. v. Akens, 150 U. S. 468, 37 L. Ed. 1148; Whitfield v. Aetna Life Ins. Co., 205 U. S. 489, 51 L. Ed. 895; John Hancock Co. v. Moore, 34 Mich. 41; Breasted v. Farmers Loan & T. Co., 4 Hill, 72; Scheffer v. Ins. Co., 25 Minn. 534; Life Assn. of America v. Waller, 57 Ga. 533; Eastabrook v. Insurance Co., 54 Me. 224; Phillips v. Ins. Co., 26 La. Ann. 404; Blackstone v. Ins. Co., 74 Mich. 592, 3 L. R. A. 486; Knickerbocker Ins. Co. v. Peters, 42 Md. 414; Boardman v. Woodmen, 47 N. H. 120, 147; State v. Pike, 49 N. H. 429; Hathaway v. Ins. Co., 48 Vt. 336; Moore v. Conn. Mut. Life Ins. Co., 1 Flipp. 363; New Home Life Assn. v. Hagler, 29 Ill. App. 437; Michigan Mutual Ins. Co. v. Naugle, 130 Ind. 79; American L. Ins. Co. v. Isett, 74 Pa. St. 176; Schultz v. Ins. Co., 40 Ohio St. 217; Phadenhauer v. Germania Life Ins. Co., 7 Heisk. 567; Hiatt v. Ins. Co., 2 Dill. 572; Waters v. Conn. Mut. Life Ins. Co., 2 Fed. 892; Mutual L. Ins. Co. v. Leubrie, 71 Fed. 843; 1 Wharton and Stilles Med. Jur., sec. 249, 14 R. C. L. 1230, 1231. (3) Sec. 6945, R. S. 1909, (Sec. 6150, R. S. 1919), is founded upon the salutary principle that where one honestly and in good faith acquires and pays insurance upon his life without any dishonest intention, the

objects of his solicitude ought not to be embarrassed in the recovery of the indemnity by speculative and impractical inquiry into an invisible, mysterious and supposititious state of mind which has supervened as an impulse to self-destruction. Woodlock v. Aetna Life Ins. Co., 225 S. W. 1000; Conn. Mut. Life Ins. Co. v. Akens, 109 U. S. 131, 27 L. Ed. 882. (4) Definition is a description of a thing by its properties; an explanation of a word or term (Webster), and Instruction 3 embodies the definition of the word as approved by the U. S. Supreme Court in Ritter v. Ins. Co., 169 U. S. 149, 42 L. Ed. 696. See also Davis v. U. S., 165 U. S. 373, 378. (5) The evidence demonstrating insanity of the assured was so convincing and overwhelming that the trial court would have been justified in setting aside a verdict if in favor of defendant. No prejudicial error was committed against the appellant. The verdict is so clearly for the right party, the judgment ought to be affirmed. (6) Instruction 10 requested by plaintiff, and Instruction 11 asked by defendant and given by the court, expressly told the jury that they could not allow damages or attorney's fees unless they found that defendant without reasonable cause refused to pay. There was therefore an express finding that the refusal to pay was vexatious. At the instance of both plaintiff and defendant the jury were told that they may allow damages and they may allow an attorney's fee if the evidence justified. A common-sense construction of the statute permits such a finding—the language is clearly permissive and should not be construed to mean that a jury must allow an attorney's fee if it allows damages, or *vice-versa*. There is no decision of this court holding that a jury in such case must allow both damages and an attorney's fee or that it must disallow both. The case of Shoe Co. v. Assurance Co., 277 Mo. 420, cited by appellant, does not so hold. (7) There was ample affirmative proof to show vexatious refusal to pay. If it is possible to prove vexatious refusal, it was proved in this case. Appellant can-

not complain because it was not mulcted to the full extent allowed under the statute. The whole question of vexatious delay or refusal is a matter of fact to be determined by the jury. Kelly v. Ins. Co., 198 Mo. 460; Young v. Ins. Co., 269 Mo. 1; Fay v. Ins. Co., 268 Mo. 390; Patterson v. Ins. Co., 174 Mo. App. 44; Non-Royalty Shoe Co. v. Assurance Co., 277 Mo. 399; Jones v. Ins. Co., 173 Mo. App. 16.

GRAVES, P. J.—Plaintiff was the wife, and at the institution of this suit the widow, of one Charles Aufrichtig. The suit is to recover some fifteen thousand dollars upon two policies of insurance taken out by Charles Aufrichtig in defendant company. The policies are what is known as accident insurance policies. The first policy provides for payment of the full sum in it mentioned in the event of death occasioned by "bodily injuries sustained through accidental means and resulting directly from such accident independently and exclusive of all other causes." This first policy, declared upon in the first count of the petition, also contained this clause: "This policy does not cover self-destruction or any attempt thereat while sane or insane."

This policy was originally for $5,000, but under its terms the principal sum had reached the limit of $7,500 at the death of Aufrichtig, so that at the date of the death the policy was, under its terms, a policy for said $7,500. This policy was taken out in 1911.

The second count of the petition is on a similar policy for $7,500 taken out in 1916. It called for the full sum named in the policy in case of death, but contained this provision: "against loss resulting from bodily injuries, effected directly and independently of all other causes through accidental means (excluding self-destruction, or any attempt thereat, while sane or insane.)"

Each count of the petition charges vexatious delay and asks for ten per cent for damages and an attorney's fee of $1,000.

The answer admits that plaintiff is the beneficiary,

and other formal matters. Thereafter the answer is (1) a general denial, and (2) denies that death of Aufrichtig was by accidental means; denies that he was insane at the time; avers that he intentionally (while sane) committed suicide by taking cyanide of potassium; and further pleads the terms of the policy set out supra as a complete defense, whether the deceased was either sane or insane at the time he took the poison aforesaid. The answer to the second count was similar. The reply put in issue all new matter in the answers. There is no question as to how deceased came to his death. He died from the poison (cyanide of potassium) which he took on August 12, 1918.

The verdict of the jury was for a total of $18,025.76, and judgment accordingly. No damages were allowed, except $1,000, upon each count for attorney's fees. That is, the claim for ten per cent of the amount as damages was disallowed by the jury. Interest upon each count in the sum of $512.88 was allowed.

We shall not rehash the evidence in this case upon the question of the insanity of the deceased at the time he took the poison. Suffice it to say that there was very substantial evidence from which the jury could find that he was insane at the time. This outlines the case.

I. In both counts of the petition the following averments are made:

"Plaintiff further states that on the 12th day of August, 1918, while the said policy as renewed and extended as aforesaid, was in full force and effect, the said Charles Aufrichtig, at the city of St. Louis, in the State of Missouri, did receive bodily injury through accidental means, to-wit, through drinking or swallowing a deadly poison known as cyanide of potassium, which then and there resulted directly, independently and exclusively of all other causes in the death of said Charles Aufrichtig, which said death occurred on the said 12th day of August, 1918.

Accidental Death.

"Plaintiff further states that on said 12th day of August, 1918, and at the time of swallowing or drinking said poison said Charles Aufrichtig was insane."

The foregoing obviates some things that were said in Brunswick v. Standard Accident Insurance Co., 278 Mo. 154. These averments in effect admit suicide, but aver that he was insane at the time. They aver that he took the poison, but was insane when he did so. These allegations suffice to permit the plaintiff not only to prove self-destruction, but to show that the deceased was insane when he committed the act. In this respect this case differs in a way from the Brunswick Case, supra. Like the Brunswick Case, the instant case charges that deceased took cyanide of potassium, but it adds that he was insane when he did so. The latter averment was not in the Brunswick Case.

In suits upon accident insurance policies the burden is upon the plaintiff to show that the death was the result of an accident, or by and through accidental means. This is well settled law in this jurisdiction. [Laessig v. Travelers' Protective Assn., 169 Mo. l. c. 280 et seq.; Brunswick v. Ins. Co., 278 Mo. l. c. 166. See also note on the Brunswick Case, in 7 A. L. R. 1226.] A long line of cases might be cited, but these will suffice.

In this case, however, there is strong evidence tending to show the insanity of the deceased, and the jury was justified in finding that he was insane when he took the poison. It has been also ruled that suicide or self-destruction by an insane person is an accidental injury within the terms of a policy providing that before there shall be liability the injury or death must be occasioned "through accidental means and resulting directly from such accident independently of all other causes" and similar expressions in accident policies. That suicide by an insane person is a death by accidental means is a proposition abundantly sustained by authority, both State and Federal. [Brunswick v. Ins. Co., 278 Mo. l. c. 166; Andrus v. Accident Assn., 283 Mo. l. c. 453; Whitfield v. Ins. Co.,

205 U. S. 489; 14 R. C. L. p. 1230, and cases cited in the note 3.] In 14 R. C. L. at page 1230, it is said:

"It is universally recognized, however, that self-destruction while insane is not suicide within such a provision, and that a condition avoiding a policy if the insured shall die "by his own hand" or "by his own act" is equivalent to a proviso against suicide or intentional self-destruction; the only conflict in. the authorities is with reference to the degree of insanity which will nullify the provision."

This refers to contracts making the general provisions against death by suicide, and has no reference especially to cases which may be covered by statutes, or contracts against liability for "suicide, whilst sane, or insane."

The result of the rulings is that self-destruction whilst sane is not an accidental death, but self-destruction whilst insane is an accidental death. The verdict of the jury in the instant case fixes the fact that the act of the deceased was the result of insanity and therefore his death was accidental. This fixes liability, unless the provisions of the policies change the situation. That matter we discuss next.

II.    Counsel for the defendant, and counsel *amici curiae,* urge that even if it be conceded that self-destruction whilst insane is an accident within the general terms of the policy, yet the defendant had the right to contract against that kind of an accident. In support they cite Adkins v. Columbia Life Insurance Co., 70 Mo. 27, and other cases.

Contract Against
Unintentional
Self-Destruction.

We think it may be safely said that, absent a statute precluding such a contract, an accident insurance company might exclude certain kinds and classes of accidents from those which might fall under the general terms of their policy. It would be purely a matter of contract, and the contract would be valid, unless such contract was prohibited by law. In other words, absent

a statute, the company could contract against that class of accidents known as self-destruction whilst insane. In fact, by contract, the company might exclude from its liability any one or more classes of accidents. Under the great weight of authority self-destruction is an accident and included in the general terms of the policy insuring against injury or death from accidental means. However, this general opinion of the courts does not preclude the company from contracting against this particular class of accidents or accidental means, if there be no statute precluding such action.

Respondent contends that such companies (accident insurance companies) have been precluded from exempting such accidents as self-destruction, whilst insane, because of our statute, Section 6150, Revised Statutes 1919, formerly Section 6945, Revised Statutes 1909. This statute was first enacted in 1879, and reads:

"In all suits upon *policies of insurance on life* hereafter issued by any company doing business in this State, to a citizen of this State, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

This statute provides (1) that suicide shall not be a defense to an action on the policy, unless suicide was contemplated when the policy was applied for and taken out, and that (2) "any stipulation in the policy to the contrary shall be void."

This statute was not considered in the Adkins Case, supra. That case was decided in October, 1879, but it proceeds upon general principles and makes no reference to a statute. There may be some slight variances in our cases since this statute, but when all the facts of each case are considered they harmonize fairly well. The Adkins Case we have mentioned. We need not discuss Haynie v. Knights Templars & Masons' Indemnity Co., 139 Mo. 416, because in the case of assessment insurance

companies there was a provision of law which exempted them from all provisions of the general insurance laws, save and except such as might be made applicable by the chapter governing such companies. [See Haynie Case, supra, 139 Mo. l. c. 424.]

Before going further with the cases it should be noted that this statute (Sec. 6150, supra) could not well apply to self-destruction whilst sane, because under an accident policy self-destruction whilst sane is not an accident (Brunswick v. Ins. Co., 278 Mo. l. c. 166), and therefore is not covered by the usual general terms of an accident policy. As such act is not an accident there is no use or sense of an accident policy mentioning self-destruction whilst sane at all in its exceptions. But self-destruction whilst insane is an accident, and the sole questions in this case are (1) whether or not the exception in the policy covering this class of accidental means of death is valid under the statute, if it applies to accident insurance, and (2) does the statute apply to such policies?

In the case of Logan v. Fidelity & Casualty Co., 146 Mo. 114, it was ruled that the statute did apply. It should be noted that the same judge who wrote the Logan Case also wrote the Haynie Case, supra, but the difference between the two cases is well understood when the discussion on page 424 et seq. of the Haynie opinion is read. In this Logan Case the contention now made by both counsel and counsel *amici curiae* was made. See the digest of the briefs on page 115 et seq. of the Logan Case. The same matter has been urged in subsequent cases, and in all we have ruled, in effect, that self-destruction whilst insane is an accident, and that the statute made void any clause in an accident policy which undertook to exempt the company from liability when death resulted from self-destruction whilst insane. The broad ruling in the Logan Case may have been somewhat limited in the Brunswick and other later cases, in that we have ruled that the statute could have no application to accident policy cases where the self-destruction was a sane act. This, because self-de-

struction, whilst sane, is not an accident at all, and would not fall within the purview of a contract covering liability for injury or death by accidental means. In such case there is no reason for invoking the statute. The statute, however, has been held applicable, not only in the Logan Case, supra, but in a number of cases since, where we were called upon to discuss the statute in actions where self-destruction whilst insane was involved, or upon retrial might be involved. Thus in Brunswick v. Ins. Co., 278 Mo. l. c. 166, we said:

"But where the assured solemnly contracts in an accident policy that liability for his death accrues only when the cause of death shall be an accidental injury, nothing seems clearer than that Section 6945, supra, has no application; unless, as already stated, assured shall commit suicide while insane. In the latter event the death, being unintentional, is held to be accidental, and though suicide is expressly excepted by the policy, recovery can be had because of the saving provisions of said Section 6945."

In Andrus v. Accident Assn., 283 Mo. l. c. 453, it is said: "(a) If the deceased committed suicide while insane his beneficiary could recover, and Section 6945 removes the defense of suicide."

So too in Scales v. Ins. Co., 212 S. W. l. c. 10, it is said: "Has the plaintiff here any cause of action under the first or accident clause of the policy? If the insured had been insane when he drank the poison, the suicide would have been an accidental death covered by that accident clause, and the defense of suicide would have been taken out of the policy by the statute."

In Woodlock v. Life Ins. Co., 225 S. W. l. c. 1002, after a review of all our late cases, we said:

"Applying the doctrine to this case, we are impelled to the conclusion that the provision of this policy, authorizing a recovery in an amount equal to one-tenth of the principal indemnity named in the policy, in cases where the death was the result of injuries intentionally inflicted by himself, is in the nature of special insurance

applicable to such cases alone, and not to cases of accidental death by suicide while insane. We also hold that the provision of the policy by which the recovery is limited to ten per cent of such principal amount in case of suicide while insane is void under the provisions of said Section 6945, and that in such case the recovery should be for the full amount of indemnity, with accumulations and interest.''

It should be noted that Section 6945, Revised Statutes 1909, the statute mentioned in these cases, is the original Act of 1879, and is now Section 6150, Revised Statutes 1919, set out supra.

Counsel urge that the history of the statute makes it inapplicable to policies of accident insurance. The same contention has been urged (perhaps not so vehemently nor so elaborately) in several of the cases we have cited supra. We have no disposition to recede from our former rulings as to the applicability of the statute, and this judgment must be affirmed, unless there were reversible errors in the course of the trial.

III. The defendant in its assignment of errors make some thirteen assignments, but when it comes to make its points and cite its authorities, the list is cut down to six. The first three of these are disposed of by what we have already said. Where the case comes down to the question of sanity or insanity, then the real issue is much simplified. This was the situation here. We have ruled that there was ample evidence to take the question of sanity or insanity to the jury. We have also ruled that self-destruction whilst insane was an accidental means of death within the meaning of the policy, and that it could not be excepted by the policy under our statute. These rulings dispose of the first three points made in the appellant's brief.

The fourth point goes to alleged improper conduct of counsel for plaintiff in arguing the case. A careful reading of these arguments will convince the most tech-

**Argument to Jury.** nical mind that there is no substance to this claim. The trial court eliminated all that might tend toward the improper. It might be said that the trial court was rather close in his rulings in this matter. He may have cut out some things that could have well been said.

IV. Question is made as to the form of the verdict, and as to the want of evidence to show vexatious delay **Vexatious Delay: Attorney Fee.** in the payment of the policies. The statute, as amended in 1911, is now Section 6337, Revised Statutes 1919, and reads:

"In an action against any insurance company to recover the amount of any loss under a policy of fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance, if it appears from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent on the amount of the loss and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict."

The use of the word "may" leaves a discretion in the jury to award or not award the ten per cent damage and attorney's fees. It has been ruled that (1) there should be at least a general verdict assessing both the penalty and the attorney's fees, or (2) "an affirmative finding that the refusal to pay was in fact vexatious." [Shoe Co. v. Assurance Co., 277 Mo. l. c. 421.] This the case rules to be technical error, but error against the plaintiff. The verdict in that case was as in the verdict in this case. Attorney's fees were allowed and stated in the verdict, but the ten per cent penalty was not allowed. With the view we entertain in this case we need not discuss the propriety of the ruling supra. We feel that there was no substantial evidence to sustain the penalty of the statute, either for the ten per cent of the

amount, or the attorney's fees. The statute is penal and should be strictly construed. [Shoe Co. Case, supra.]

In Fay v. Insurance Co., 268 Mo. l. c. 389, we ruled that the petition must allege the damages or penalties recoverable under this statute, and the proof must show a vexatious refusal to pay. In the Shoe Co. Case, 277 Mo. l. c. 423, we approved the following rule as announced by the Kansas City Court of Appeals:

"And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was wilful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention, is no reason for inflicting the penalty."

In the case before us there was the single issue of fact whether or not the self-destruction of deceased was done while sane or while insane. The record of evidence discloses no bad faith in contending that deceased was sane at the time. It will not do to say that insurance companies, acting in good faith, may not contest either an issue of fact or an issue of law, without subjecting itself to the penalties of the statute, supra. There is enough in this record to justify the holding that the defense was made in good faith upon this single question of fact. It is true that in the briefs here the Brunswick Case is vehemently attacked, and, if it were not for the facts in the record, one might conclude that the refusal to pay was for the purpose of attacking that case, and all cases from the Logan Case on to the present time. However, where the facts indicate, as here, that the company could in good faith attack the alleged insanity of deceased, it should not be penalized simply because after defeat below it appealed from the verdict of insanity, and not only presses that question, but the other question as well. The assessment of attorney's fees should not stand, for want of evidence tending to show a vexatious refusal to pay. This, however, can be cured by

*remittitur*, for the jury fixed the amount at $2,000, or $1,000 upon each count. The facts in this record are very different from those cases where we have sustained the penalties of the statute. Had the jury found that deceased was sane at the time of his self-destruction, such finding would not have been without some substantial evidence to support it. In such a case we should not denounce the defendant as acting in bad faith in interposing the defense, and trying the case. In other words, we should not say that the refusal "was wilful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial."

Whatever we may conclude as to other alleged errors, there was error in permitting the judgment for attorney's fees to stand.

V. The only point made as to instructions reads: "Instructions improperly given on behalf of plaintiff are not cured by defendant's instructions. [Bellows v. Ins. Co., 203 S. W. l. c. 985; Hall v. Coal Co., 260 Mo. 351; State ex rel. v. Ellison, 272 Mo. l. c. 583.]"

It will be noted that no point is made here as to the incorrectness of either of plaintiff's instruction. This is point 6, the last point made under "Points and Authorities."

The assignments of error cover objections to instructions, and there is some argument as to the modification of some of defendant's instructions, and the error of plaintiff's instructions defining insanity. It is not pointed out just how the plaintiff was depending upon defendant's instructions for aid. The cases cited under this Point 6 announce good law, but their application to this case is far-fetched. Nor is it pointed out just how the court modified defendant's instructions. These matters may therefore be put aside. As said there is complaint of the instructions defining insanity. We shall not go into details. They are practically rescripts of instructions approved in Ritter v. Mutual Life Insurance Co., 169 U. S. l. c. 149, and cases cited therein.

The case was well tried, save and except the matter of penalties under our statute, supra. This can be cured by *remittitur,* as the amount is fixed by the verdict. If within ten days the plaintiff will remit the sum of two thousand dollars as of the date of the judgment, then the judgment is affirmed for the sum of $16,025.76, as and of the date of the judgment. If no *remittitur* be filed as required above then the said judgment shall be reversed and cause remanded. All concur.